UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AFC FRANCHISING, LLC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 2:20-cv-00456-JHE |
| ) | |
| DANILO PURUGGANAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION[1]

Plaintiff AFC Franchising, LLC ("AFC" or "Plaintiff") commenced this action in the Circuit Court of Shelby County, Alabama asserting two declaratory judgment counts as to provisions of a Master Development Agreement and one count for attorneys' fees and costs. (Doc. 1-1). On April 2, 2020, Defendant Danilo Purugganan ("Purugganan" or "Defendant") removed this action to this Court. (Doc. 1). Purugganan then moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3), for lack of personal jurisdiction and improper venue, or, alternatively, for transfer of venue. (Doc. 3). The motion to dismiss is fully briefed. (Docs. 7 & 12). Thereafter, Plaintiff AFC timely moved to remand this action to the state court. (Doc. 13). AFC argues this Court lacks subject matter jurisdiction because, although the parties are diverse, the amount-in-controversy is not met. (Id.). Alternatively, AFC argues the forum selection clause in the Master Development Agreement requires this action be pursued in

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

1

state court in Shelby County. (*Id.*). The motion to remand is also fully briefed. (Doc. 21, 25, & 26).

For the reasons stated below, AFC's motion to remand (doc. 13) is **DENIED**, and Purugganan's motion to dismiss (doc. 3) is **GRANTED** on the basis that this Court lacks personal jurisdiction over the defendant.

## I. Background

The following factual allegations are contained in the complaint:

AFC is an Alabama limited liability company with its principal place of business in Shelby County, Alabama. (Doc. 1-1 at ¶ 2). Purugganan is a resident individual of the state of New York. (*Id.* at ¶ 2). On August 26, 2009, Purugganan executed a Master Developer Agreement (also referred to as the Master Development Agreement). (*Id.* at ¶ 4; *see* doc. 1-2). At the time the Master Development Agreement was executed, the franchisor was Doctors Express Franchising, LLC ("DEF"). (Doc. 1-1 at ¶ 5).

In 2012, DRX Urgent Care, ("DRX") acquired the assets of the "Doctors Express" system from DEF. (Doc. 1-1 at ¶ 6). DRX took assignment of the "Doctors Express" Master Development Agreement from DEF, including that of Purugganan. (*Id.*). The parties succeeded to the terms of the Master Development Agreement (*id.*), including § 19.7 ("Consent to Jurisdiction"), which provides in pertinent part as follows:

> You and your owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us must be commenced in a state or federal court of competent jurisdiction within such state or judicial district in which we have our principal place of business at the time the action is commenced, and you (and each owner) irrevocably submit to the jurisdiction of those courts and waive any objection you (or the owner) might have to either the jurisdiction of or venue in those courts.

(Doc. 1-2 at 31, § 19.7).

A dispute has arisen over the interpretation of the Master Development Agreement, and the parties have engaged in negotiations. (Doc. 1-1 at ¶ 9). Purugganan has threatened to file suit in venues other than Alabama, which AFC contends would breach the forum selection clause. (*Id.*). Additionally, the initial dispute over the interpretation of the Master Services Agreement involves AFC's right to operate company-owned franchises in the territory defined in the Master Services Agreement. (*Id.* at ¶ 10). Purugganan contends that ACF cannot develop such franchises. (*Id.*). AFC contends that § 1.4 ("Limited Exclusivity") of the Master Development Agreement allows for it to develop such franchises because the Master Services Agreement did not grant exclusive development rights to Purugganan and reserved AFC's right to develop such company-owned franchises. (*Id.*). Section 1.4 states as follows:

> Provided that you are in compliance with the terms of this Agreement, we will not grant another master developer the right to solicit Prospects for Doctors Express Urgent Care Businesses in the Territory. Except as expressly granted by this Section 1.4, we and our affiliates retain all rights with respect to identification of Prospects and Franchisees for Doctors Express Urgent Care Businesses and Doctors Express Urgent Care Centers, the System, operation of business under the Marks, the sale of franchises for similar or dissimilar services, the operation of businesses offering similar or dissimilar services and any other activities we deem appropriate whenever and wherever we desire and you acknowledge that we have not granted you any exclusive rights.

(Doc. 1-2 at 8, § 1.4)

In light of Purugganan's threat to breach the forum selection clause, AFC initiated this action to seek a declaration construing the forum selection clause according to its terms and to enter judgment requiring the parties to litigate any issues in Alabama. (Doc. 1-1 at ¶ 11). AFC also seeks a declaration construing the limited exclusivity clause according to its terms and to enter judgment declaring AFC's rights with respect to its development of company-owned franchises in the territory embraced by the Master Development Agreement. (*Id.* at ¶12).

3

## II. Analysis

The motions present several distinct challenges to this Court's jurisdiction; specifically, challenges to personal jurisdiction, venue, and subject-matter jurisdiction through both a challenge to the amount-in-controversy requirement being met and the forum selection clause.

### A. Subject Matter Jurisdiction: Amount-in-Controversy

AFC contends this action should be remanded to the Circuit Court of Shelby County because this Court lacks subject matter jurisdiction. (Doc. 13 at 1). Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Accordingly, this Court is "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (citing *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332, Purugganan must demonstrate (1) every plaintiff is diverse from every defendant, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998), and (2) the amount in controversy exceeds $75,000.00. *See e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). The parties do not dispute there is diversity of citizenship; however, AFC contends Purugganan cannot meet his burden of establishing that the amount of controversy exceeds $75,000.00. (*See* doc. 13 at 1).

When a plaintiff seeks injunctive or declaratory relief, "`[t]he amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'" *Federated Mut. Ins. Co. v. McKinnon Motors, Inc.*, 329 F.3d 805, 807 (11th Cir.2003) (quoting *Cohen v. Office Depot. Inc.*, 204 F.3d 1069, 1071 (11th Cir.2000)) (emphasis added). Accordingly, in cases involving only declaratory and injunctive relief, "the party seeking to invoke federal jurisdiction bears the

burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co.*, 329 F.3d at 807 (citation omitted). This is true whether the court is considering removed cases or those filed initially in federal court. *See id.* at 807 n.1 (recognizing analogy between removed cases involving indeterminate damages and cases involving declaratory judgments). For federal jurisdiction to attach, the removing defendant must show that the declaratory or injunctive relief flowing to the plaintiff is sufficiently measurable and certain to satisfy the amount in controversy requirement. *See Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1268 (11th Cir.2000) ("[T]he value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted").

AFC argues that it has sought a declaratory judgment that invokes no issues of injury or damages, but that was filed in an effort to put a stop to Purugganan's "threats, harassment, and attempted intimidation" wherein, according to AFC, Purugganan declared his intent to forum shop despite his contractual agreement to the contrary. (Doc. 13 at 2-3). AFC contends the primary benefit of the declaratory judgment would be having this dispute decided in the forum specified in the Master Development Agreement. (*Id.* at 3). While this has some value, AFC argues its convenience is not measurable in the sense required by 28 U.S.C. §1332 or 1441. (*Id.*). AFC further contends that if it obtains a declaration that it may operate company-owned franchises in a portion of Purugganan's territory, the benefit would be contingent on the decision to exercise those rights. (*Id.*). Moreover, AFC contends, if it does decide to open franchises, whether any benefits would come will depend on unknowable future events. (*Id.*). AFC argues this case is analogous to *Ericsson GE Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216 (11th Cir. 1997) ("*Ericsson*"). (*Id.* at 3-4). The facts in this case differ from *Ericsson*, because

5

*Ericsson* dealt with voiding a contract between the defendant and the City of Birmingham, the value of which was "too speculative" from the plaintiff's perspective. *Ericsson*, 120 F.3d at 217. Here, as explained more fully below, there is an established percentage of gross sales from ongoing businesses, which is not "immeasurable or "too speculative" as required for remand. (*Id.*)

Purugganan contends the amount in controversy in this action is more than sufficient for this Court to exercise diversity jurisdiction. (Doc. 21 at 2). Specifically, Purugganan argues that the facts in *Ericsson* are distinguishable from the facts in this case because the damages in this action are not speculative. (*Id.*). As Purugganan explains, if AFC is granted the declaratory relief it requests, AFC will be permitted to close on the franchises that Purugganan developed and monitors, will be allowed to transform them into corporate stores, and will be able to discontinue paying Purugganan the 2.5% gross sales from those franchises that AFC has been paying for years prior to this application. (*Id.* at 3). Unlike the facts in *Ericsson*, the amount of the 2.5% gross sales has been established over years, by the ongoing successful businesses of those franchises, which, as shown through declaration, exceeds $ 394,000.00 for two years. (*Id.*) (citing doc. 21-2 at ¶ 10). This is distinguishable from *Ericsson* where the relief requested would result in re-opening bidding on a contract, which the benefit from was found to be speculative.

In assessing whether Purugganan has met his burden, the court should first determine from looking at the complaint whether it is facially apparent that the amount in controversy exceeds $ 75,000.00. *Jones v. Novartis Pharm.*, 952 F. Supp. 2d 1277, 1282 (N.D. Ala. 2013). In making this determination, the court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. *Id.* (citations omitted). Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *Id.* The court may make "reasonable

deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent the case is removable. *Id.* at 1282-83 (citations omitted). A district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *Id.* at 1283 (quoting *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir.2010)). If the jurisdictional amount is not facially apparent, the court should look to the removal notice and may examine accompanying evidence provided by the defendant. *Id.* at 1283 (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir.2010)).

Although AFC states it has not purchased any franchises in Purugganan's territory (doc. 13 at 3), it has already taken significant steps to do so, including preventing the sale to third parties and sending letters of intent and a contract to purchase them. (Doc. 21-2 at ¶ 7). Additionally, AFC publicly announced its intention to purchase the subject franchises in Purugganan's territory and to terminate its payment of the 2.5% gross sale to Purugganan. (*Id.* at ¶¶ 7-8). AFC's overt actions to take over ongoing businesses show that any benefit from the declaratory judgment would not be speculative but would be significantly in excess of $ 75,000.00. AFC's motion to remand for lack of subject matter jurisdiction is **DENIED**.

### B. Forum Selection Clause

The Master Development Agreement contains the following forum selection clause:

> You and your owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us **must be commenced** in a state or federal court of competent jurisdiction within such state or judicial district in which we have our principal place of business at the time the action is commenced, and **you (and each owner) irrevocably submit to the jurisdiction of those courts and waive any objection you (or the owner) might have to either the jurisdiction of or venue in those courts.**

(Doc. 1-2 at ¶ 19.7) (emphasis added).

7

AFC argues this provision establishes the Circuit Court of Shelby County as the proper forum. (Doc. 13 at 5). Specifically, AFC argues that the provision recognizes both this federal Court and the Shelby County court as potentially proper forums for litigation, but that the language further provides that the election between the two alternatives occurs upon the "commencement" of the action. (*Id.*). Given that this action was commenced in the Circuit Court of Shelby County, AFC contends the action is due to be remanded on this non-jurisdictional ground. (*Id.*). ACF points to *Snapper, Inc. v. Redan*, 171 F.3d 1249 (11th Cir. 1999), where the Eleventh Circuit held that remand was proper under a forum selection clause that gave the plaintiff the choice to file suit in Georgia state court or the Northern District of Georgia. (Doc. 13 at 6).

Purugganan contends the forum selection clause does not require remand because it does not give preference to one jurisdiction over the other with respect to federal or state court. (Doc. 21 at 5-6). According to Purugganan, either party was entitled to sue in either state or federal court, and the provision does not provide that either party waived the right to remove an action commenced in state court to federal court. (*Id.* at 6). Purugganan also contends that the forum selection clause in *Snapper, Inc. v. Redan*, 171 F.3d 1249 (11th Cir. 1999), was significantly different than the one in this case. (*Id.*). That provision stated, in pertinent part, as follows:

> The Undersigned agrees that any legal action or proceeding with respect to this instrument may be brought in the courts of the State of Georgia or the United States District Court, Northern District of Georgia, Atlanta Division, all **as Creditor may elect**. By execution of this instrument, the Undersigned hereby submits to each such jurisdiction, hereby expressly waiving whatever rights may correspond to it by reason of its present or future domicile. Nothing herein shall affect the right of Creditor to commence legal proceedings or otherwise proceed against the Undersigned in any other jurisdiction or to serve process in any manner permitted or required by law. In furtherance of the foregoing, the Undersigned hereby appoints the Secretary of the State of Georgia as its agent for service of process.

*Snapper, Inc.*, 171 F.3d at 1260.

The language in the *Snapper* forum selection provision expressly provides that the election

8

of the state or federal court was to be made by only one of the parties, i.e., the creditor. That is not the case here. The forum selection clause in this case is permissive, as it does not include language indicating that either party waived the right to remove the action to federal court, as it does not vest the choice of forum in one particular party. The "must be commenced" language simply specifies that any action could be brought in state or federal court. AFC's argument that commencement constituted an election as to one jurisdiction to the exclusion of the other is not supported by the language of the forum selection clause. *See GMAC Comm. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 242 F. Supp. 2d 279, 282-83 (S.D.N.Y. 2002) (contrasting a permissive forum selection clause with the forum selection clause from *Snapper Inc. v. Redan*, 171 F.3d 1249 (11th Cir. 1999)); *see also Healthcare & Diagnostic Solutions, Inc. v. Patient Care Pharmacy Corps.*, No. 18-cv-153-CG-N, 2018 WL 3750979 (S.D. Ala. July 23, 2018), *report and recommendation adopted and accepted by* 2018 WL 3749406 (S.D. Ala. Aug. 7, 2018). The forum selection clause in § 19.7 does not provide a basis to remand this action to state court. AFC's motion to remand based on the forum selection clause is **DENIED**.

### C. Personal Jurisdiction

Although this Court has subject matter jurisdiction over this action as explained above, Purugganan moves to dismiss on the basis of a lack of personal jurisdiction. Courts "consider two questions in resolving personal jurisdiction: (1) whether personal jurisdiction exists over the nonresident defendant . . . under [the forum state]'s long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v.*

9

=

*Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing ALA. R. CIV. P. 4.2(b); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)).

However, when a nonresident defendant contractually agrees to personal jurisdiction in a particular forum, the usual due process analysis need not be done. *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir.1989). Although, to determine whether there is personal jurisdiction, the court would normally analyze Purugganan's minimum contacts with Alabama, this analysis would be precluded by a forum selection clause that is (1) freely negotiated and (2) not unreasonable or unjust. *Id.* In other words, a valid forum selection clause is capable of conferring personal jurisdiction over a defendant under the principles of consent and waiver.

Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) (1982), not state law. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29 (1988). The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general. *See In re Ricoh Corp.*, 870 F.2d 570, 573–74 (11th Cir.1989) (considering whether the clause was "freely and fairly negotiated by experienced business professionals" and whether there was any fraud, duress, misrepresentation, or other misconduct in connection with the agreement to the forum selection clause).

Purugganan contends this action should be dismissed for lack of personal jurisdiction. (Doc. 3 at 1). Specifically, Purugganan argues that AFC "failed and refused to participate in mediation, as a mandatory prerequisite pursuant to the Master Development Agreement . . . executed between the parties before commencing any lawsuit with limited exceptions that are not applicable here . . . ." (*Id.* at 2). Purugganan further states that he lacks sufficient contacts with the State of Alabama to confer personal jurisdiction upon him and that he could not have

reasonably anticipated being haled in this Court. (*Id.*).

### 1. Additional Facts Relevant to Personal Jurisdiction

On August 26, 2009, Purugganan signed the Agreement with Doctors Express Franchising, LLC ("DEF") wherein he paid $ 189,000.00 to DEF for rights to a specified territory to open and manage urgent care centers in Connecticut and New York. (Doc. 3-2 at 3). The transaction was consummated in Massachusetts and Maryland. (*Id.*). This Agreement provided that Puruggunan would have the right to operate within the specified territory.

The Agreement did not contemplate territory in Alabama or any state other than Connecticut or New York. The Agreement provided that, in exchange for Purugganan's efforts, investment of time and resources in developing, managing, and supporting the franchisees in Connecticut and New York, Purugganan would receive 2.5% of the gross sales from each of the franchises in his exclusive territory that he developed, managed, and supported.

In April 2012, AFC acquired the assets and obligations of DEF from DRX Urgent Care, LLC ("DRX"). (Doc. 1-1 at 7). This sale included the assignment of DEF franchise Agreements to AFC, including the Agreement entered into with Purugganan. Purugganan was not a party to this transaction and, according to him, did not consent to the transaction.

After disputes arose, Puruggunan provided notice and demand for mediation, pursuant to the Agreement, on February 28, 2020. (Doc. 3-3). Despite this notice and demand, AFC filed suit in the Circuit Court for Shelby County, Alabama on March 6, 2020. (*See* doc. 1-1). Believing AFC was attempting to avoid the contractual mediation requirement and improperly gain jurisdiction in its home state, Purugganan filed a complaint in the United States District Court for Connecticut (where he believes jurisdiction and venue are proper) addressing the issues contained in this action. (Doc. 3-4). On April 2, 2020, Purugganan timely removed the Shelby County action

to this Court. (*See* doc. 1).

### 2. Personal Jurisdiction Analysis

Purugganan contends this Court lacks personal jurisdiction because he does not have sufficient minimum contacts with the State of Alabama and the forum selection clause does not confer such personal jurisdiction through consent and waiver. (Doc. 3 at 5-9). Specifically, with regard to the forum selection clause, Purugganan argues that when he entered into the Agreement with DEF, DEF's principal place of business was in Maryland. (*Id.* at 7). Thus, he anticipated any litigation would be brought within Maryland. Purugganan points out that DEF's unilateral action of selling its franchise to AFC in 2012 does not mean he agreed that he would be subject to jurisdiction in Alabama. (*Id.*). In fact, Purugganan asserts he did not approve or consent to the assignment of the agreement to AFC. (*Id.* at 9). AFC contends the court need to look no further than the forum selection clause in the Master Development Agreement to determine whether personal jurisdiction exists. (Doc. 7 at 1).

Whether there is a forum selection clause or not, at the end of the day, personal jurisdiction is about due process. This requires a defendant have minimum contacts with the forum state so that he can foresee being haled into court there. It's about traditional notions of fair play and substantial justice. Forum selection clauses are enforceable because they confer personal jurisdiction based on consent and waiver. That is not the case here. Purugganan entered into a contract with DEF, which contained a forum selection clause, stating in pertinent part: "[any action] must be commenced in a state or federal court of competent jurisdiction within such state or judicial district in which we have our principal place of business at the time the action is commenced . . . ." (Doc. 1-2 at 31, § 19.7). At the time, DEF had its principal place of business in Maryland. Purugganan supported franchises in a specified territory, specifically in Connecticut

and New York. (Doc. 3-2 at 3). The transaction was consummated in Massachusetts and Maryland. (*Id.*). AFC does not allege Purugganan has any contacts with the State of Alabama, and the undersigned has seen none.

AFC argument is simply that, because it is the assignee to the Master Development Agreement, the forum selection clause in that document requires that any relevant action be brought in the jurisdiction of its principal place of business. However, in each of the cases AFC cites, the parties expressly agreed in writing that if the contract was assigned, jurisdiction and/or venue would be in the state in which the assignee has its principal place of business. *See IFC Credit Corp. v. Aliano Bros. Gen'l Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006) ("or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located"); *Preferred Capital, Inc. v. Assoc. in Urology*, 453 F.3d 718 (6th Cir. 2006) ("of, if this Lease is assigned . . . such court to be chosen at . . .[the] assignee's sole option"); *Danka Funding, LLC v. Page, Scrantom, Sprouse, Tucker & Ford, PC*, 21 F. Supp. 2d 465, 468 (D.N.J. 1998) ("You consent to the jurisdiction of any local, state or federal court located within our or our assignee's state . . . ."); *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1158 (Colo. Ct. App. 2006); *OFC Capital v. Colonial Distribs., Inc.*, 648 S.E. 2d 140 (Ga. App. 2007). There is simply no reference to assignees in the Master Development Agreement's forum selection clause to make these cases persuasive.

DEF assigned its rights and obligations under the Master Development Agreement to AFC in 2012. This was done unilaterality, without Purugganan's consent. Purugganan did not contemplate or agree that the principle place of business of any future assignee of DEF would be the exclusive forum for a potential lawsuit.

For these reasons, the forum selection clause in the Master Development Agreement does

not subject Purugganan to suit in Alabama, AFC's principal place of business. Additionally, as discussed above, AFC is not able to demonstrate Purugganan has sufficient minimum contacts with the State of Alabama sufficient to permit the exercise of personal jurisdiction over him. Notably, AFC has not even alleged any such minimum contacts in its complaint or in its opposition to the motion to dismiss. Alabama Rule of Civil Procedure 4.2(b) and the principles of due process require that a non-resident have sufficient minimum contacts with the forum state that the non-resident purposefully directed toward the forum state, not the unilateral activity of another person or third party. *Ex Parte Ga. Farm Bureau Mut. Auto. Ins. Co.*, 889 So. 2d 545, 550 (Ala. 2004). Purugganan is a resident of New York. He maintains his businesses in Connecticut and New York. He executed the Master Development Agreement in Massachusetts, and DEF executed the Agreement in Maryland, its principal place of business. His territory under the Agreement does not and has never included Alabama. The franchises Purugganan developed are located in Connecticut. Purugganan has further submitted that he has no officer and does not offer any services in Alabama. As such, AFC has failed to allege, and there are not, sufficient contacts with the State of Alabama to support personal jurisdiction. As such, Purugganan's motion to dismiss for lack of personal jurisdiction (doc. 3) is **GRANTED**. Because this action is due to be dismissed based on a lack of personal jurisdiction, the undersigned does not reach the question of venue.[2]

### III. Conclusion

For the reasons stated above, AFC's motion for remand (doc. 13) is **DENIED**, and Purugganan's motion to dismiss (doc. 3) is **GRANTED**. A separate order will be entered.

---

[2] Because there is already a parallel lawsuit in the United States District Court for the District of Connecticut, there is no need to consider transferring this action. *See Purugganan v. AFC Franchising, LLC*, No. 3:20-cv-00360(KAD).

14

DONE this 14th day of September, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE